An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-854

Filed 3 June 2026

Wake County, No. 25JA000009-910

IN THE MATTER OF: K.K.S., a minor child.

Appeal by Respondent-Mother from an adjudication and disposition order entered 30 May 2025 by Judge Ashleigh Parker in Wake County District Court. Heard in the Court of Appeals 22 April 2026.

*Wake County Attorney's Office, by Mary Boyce Wells and David F. Hord, IV, for Petitioner-Appellee Wake County Health and Human Services.*

*Robinson & Lawing, LLP, by Christopher M. Watford, for Respondent-Appellant Mother.*

*Administrative Office of the Courts, by GAL Staff Attorney Brittany T. McKinney, for guardian ad litem.*

GRIFFIN, Judge.

Respondent-Mother appeals an order adjudicating the minor child abused and neglected, and entering disposition. Respondent-Mother argues the trial court failed to properly assume subject matter jurisdiction under the Uniform Child-Custody Jurisdiction Enforcement Act (UCCJEA). We hold the trial court had proper modification jurisdiction under the UCCJEA.

## I. Factual and Procedural History

On 21 December 2024, Petitioner Wake County Health and Human Services ("WCHHS") received a report that Kelly's[1] father[2] punched her in the face the previous day, resulting in facial injuries, and pulled a fake gun on Kelly and her sibling while the father was intoxicated. Kelly and her sibling contacted Kelly's sibling's maternal grandmother, Ms. Potts, who picked up the children from their father's house. WCHHS commenced an investigation into the family and entered a temporary safety provider agreement with Kelly's sibling's legal custodian, Ms. Potts.

On 2 January 2024, Respondent-Mother asked WCHHS about Kelly's whereabouts. Respondent-Mother informed WCHHS that no child-custody order existed and her relationship with Kelly was strained. Respondent-Mother also told WCHHS that Kelly frequently ran away from home and misbehaved while in Respondent-Mother's care. Respondent-Mother alleged a sex offender lived in the placement provider's home and several juveniles had perished while in the placement provider's care. WCHHS immediately conducted an emergency assessment of the placement, which discredited Respondent-Mother's claims.

On 7 January 2025, WCHHS, Respondent-Mother, and Kelly's father attended a child-family team meeting. During the meeting, WCHHS was informed that Kelly's paternal grandmother, Ms. Ava Jones, a resident of McDonough, Georgia, became

---

[1] We refer to the minor child K.K.S. by the pseudonym "Kelly." N.C. R. App. P. 42(b).

[2] Kelly's father is not a party to this appeal.

Kelly's legal guardian in 2011. Respondent-Mother recommended that WCHHS consider placing Kelly with her maternal grandmother, Ms. Travel Jones; however, Kelly's father wanted Kelly to remain with Ms. Potts but was willing to consider placement with Ms. Travel Jones.

On 9 January 2025, WCHHS filed a petition for abuse and neglect, naming Kelly's parents and Ms. Ava Jones, listed as "Legal Guardian/Paternal Grandmother," as parties. However, the petition stated Ms. Ava Jones was no longer willing to care for Kelly due to repeated harassment from Respondent-Mother. Attached to this petition was an affidavit from WCHHS Social Worker Tra' Adams, which provided the last five years of Kelly's residences, stating Kelly had lived with Ms. Ava Jones in Georgia from July 2019 to November 2023, Ms. Travel Jones in North Carolina from November 2023 to February 2024, Respondent-Mother and Kelly's father in North Carolina from February 2024 to December 2024, and Ms. Potts in North Carolina from December 2024 to the filing of the petition. The affidavit further stated there was a previous guardianship order dated 8 September 2011 in the State of Georgia, Probate Court of Henry County, awarding guardianship to Ms. Ava Jones, and Social Worker Adams did not know of any other claims of custody or visitation rights apart from the parents and Ms. Ava Jones. The petition also detailed prior CPS history with WCHHS in July 2009 when Johnston County DSS requested assistance with a report regarding Kelly and in July 2019 when WCHHS received a report alleging an injurious environment regarding Kelly.

On 16 January 2025, a child planning conference was held with Respondent-Mother and Kelly's father in attendance, and a memorandum of understanding was entered. An addendum to the memorandum of understanding noted Ms. Ava Jones was "no longer willing to care for [Kelly]" and the "[g]uardianship was terminated in [Georgia]." The Guardian ad Litem (GAL) was appointed on 27 January 2025.

The trial court held a pre-adjudication hearing on 11 February 2025, which was attended by the parties, including Ms. Ava Jones's provisional counsel, and ordered Kelly be placed in nonsecure custody. In its related order, the trial court found the previous Georgia order was terminated on 24 October 2012 and Ms. Ava Jones "returned [Kelly] to North Carolina and ha[d] not been involved with the child for many years." Accordingly, the trial court released Ms. Ava Jones as a party and released her provisional counsel.

On 8 May 2025, the trial court held a hearing on adjudication and disposition. During the hearing, Kelly confirmed she "left [her] grandma in Georgia to come live with [her] dad in North Carolina" in November 2023, which was the last time she was in Georgia. Kelly indicated her desire not to be placed with Respondent-Mother but to return to Georgia or Ms. Potts if she cannot stay with her father, and WCHHS Social Worker Meredith Gibson testified WCHHS has sent an ICPC Home Study request to Henry County, Georgia. Social Worker Adams testified that on 3 January 2025, she met with Ms. Ava Jones, who confirmed the Georgia guardianship. Social Worker Adams testified that Ms. Ava Jones "at that time" expressed she "continued

to have guardianship of [Kelly]." However, Social Worker Adams testified WCHHS followed up on the Georgia order and was "informed that the guardianship was . . . only for a year" and "terminated."

On 30 May 2025, the trial court entered an order adjudicating Kelly abused and neglected, and entered disposition. In its order, the trial court found the following, in relevant part:

> 2. The father and child were living in Wake County when the petition was filed.
>
> 3. The petition was properly verified by Tra' Adams, an employee of WCHHS and invokes this Court's jurisdiction.
>
> . . . .
>
> 5. The child's mother is [Respondent-Mother] who resides [in New York]. She is more than 18 years old.
>
> 6. The child's father is [father] who resides [in North Carolina]. He is more than 18 years old.
>
> . . . .
>
> 12. Hospital staff contacted CPS because Ms. Potts was not the child's custodian, they had no contact with the child's parents, and Ms. Potts believed that the child's paternal grandmother, Ava Jones, had guardianship of the child. Ms. Potts was determined to be a safe person for the child to leave the hospital with.
>
> 13. The child was able to give a history of her living situation in the past. The child lived with her paternal grandmother, Ava Jones, in Georgia for much of her life. Ms. Jones was granted guardianship of the child from August 3, 2011, until October 24, 2012 in case # 201 1-GM-423 in Henry County Probate Court, McDonough, Georgia.

14. When the father was released from prison, the child expressed a desire to live with him which is how she came to live with him in November 2023. In May 2024, the child was suspended from her assigned high school and went to live with her maternal grandmother, Travel Jones, while she finished the school year in night school.

The trial court also found WCHHS "[made] reasonable efforts to prevent the need for placement including: ma[king] collateral contacts[.]" Respondent-Mother timely appeals.

## II. Analysis

The sole issue Respondent-Mother presents in this appeal is whether "the trial court's Order on Adjudication and Disposition [must] be vacated because a prior action involving custody of the juvenile existed in Georgia and the trial court did not comply with G.S. § 50A-203 and G.S. § 50A-110 in order to assume subject matter jurisdiction." Respondent-Mother argues the trial court's adjudication and disposition order must be vacated because the trial court did not properly assume subject matter jurisdiction in that the trial court failed to make any efforts to communicate with the appropriate Georgia court and to obtain a copy of the 2011 guardianship order. WCHHS and the GAL argue North Carolina has modification jurisdiction pursuant to N.C. Gen. Stat. § 50A-203, and the trial court had no duty to communicate with the Georgia court.

We review challenges to subject matter jurisdiction de novo. *In re K.U.-S.G.*, 208 N.C. App. 128, 131, 702 S.E.2d 103, 105 (2010). To preside over a juvenile matter,

the trial court must establish proper subject matter jurisdiction over both the nature of the case and the relief sought. *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 790 (2006). "[A] trial court's general jurisdiction over the type of proceeding or over the parties does not confer jurisdiction over the specific action." *In re McKinney*, 158 N.C. App. 441, 447, 581 S.E.2d 793, 797 (2003). Instead, the petition "must contain 'allegations of facts sufficient to invoke jurisdiction over the juvenile'" or the court will lack subject matter jurisdiction over the action. *In re K.L.*, 272 N.C. App. 30, 47, 845 S.E.2d 182, 195 (2020).

"The existence of subject matter jurisdiction is a matter of law and cannot be conferred upon a court by consent. Consequently, a court's lack of subject matter jurisdiction is not waivable and can be raised at any time." *In re S.E.*, 373 N.C. 360, 364, 838 S.E.2d 328, 331 (2020) (quoting *In re K.J.L.*, 363 N.C. 343, 345–46, 677 S.E.2d 835, 837 (2009)). However, our Supreme Court has been clear, "[a]lthough the question of subject matter jurisdiction may be raised at any time . . . where the trial court has acted in a matter, 'every presumption not inconsistent with the record will be indulged in favor of jurisdiction. . . .'" *In re N.T.*, 368 N.C. 705, 707, 782 S.E.2d 502, 503 (2016) (omissions in original) (internal citations omitted). "Nothing else appearing, we apply 'the *prima facie* presumption of rightful jurisdiction which arises from the fact that a court of general jurisdiction has acted in the matter.'" *Id.* (quoting *Williamson v. Spivey,* 224 N.C. 311, 313, 30 S.E.2d 46, 47 (1944) (citations omitted)). Accordingly, "[t]he burden is on the party asserting want of jurisdiction to show such

want." *Id.* (alteration in original) (quoting *Dellinger v. Clark*, 234 N.C. 419, 424, 67 S.E.2d 448, 452 (1951)).

Under the North Carolina Juvenile Code, our district courts have exclusive, original jurisdiction over cases of alleged child abuse, neglect, and dependency. N.C. Gen. Stat. § 7B-200(a) (2025). Proper section 7B-200(a) subject matter jurisdiction requires compliance with the UCCJEA. *In re L.T.,* 374 N.C. 567, 569, 843 S.E.2d 199, 200–01 (2020). "The trial court is not required to make specific findings demonstrating jurisdiction under the UCCJEA, but the record must reflect that the jurisdictional prerequisites of the Act were satisfied when the court exercised jurisdiction." *Id.* at 569, 843 S.E.2d at 200–01. If a trial court fails to establish requisite UCCJEA jurisdiction, "then the whole proceeding is null and void . . . as if it never happened." *In re J.H.*, 244 N.C. App. 255, 259, 780 S.E.2d 228, 233 (2015).

Because the UCCJEA has been adopted by our General Assembly, N.C. Gen. Stat. § 50A-101 *et seq.* (2025),[3] we follow the UCCJEA as codified in our statutes, which sets out the procedure for determining how a court in this state may exercise jurisdiction in such an action.

The UCCJEA defines initial determination as "the first child-custody determination concerning a particular child."[4] N.C. Gen. Stat. § 50A-102(8) (2025).

---

[3] Georgia has also adopted the UCCJEA. Ga. Code Ann. § 19-9-40 *et seq.* (2026).

[4] A "'Child-custody determination' means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child. The term includes a permanent, temporary, initial, and modification order." N.C. Gen. Stat. § 50A-102(3) (2025).

It further defines "modification" as "a child-custody determination that changes, replaces, supersedes, or is otherwise made after a previous determination concerning the same child, whether or not it is made by the court that made the previous determination." N.C. Gen. Stat. § 50A-102(11) (2025). Therefore, because the Georgia order was "the first child-custody determination concerning [Kelly]" in the record, N.C. Gen. Stat. § 50A-102(8); Georgia retained exclusive, continuing jurisdiction until certain statutory factors were met, N.C. Gen. Stat. § 50A-202 (2025), Ga. Code Ann. § 19-9-62 (2026); and the North Carolina action on appeal was "made after a previous determination concerning [Kelly]," we conduct our review of the trial court's subject matter jurisdiction pursuant to N.C. Gen. Stat. § 50A-203.

"N.C. Gen. Stat. § 50A-203 governs when the trial court has jurisdiction to modify an out-of-state custody order under the UCCJEA." *L.T.*, 374 N.C. at 569, 843 S.E.2d at 200–01 (citation modified). "[The UCCJEA] sets out a two-part test for establishing modification jurisdiction: first, the trial court must have jurisdiction to make an initial custody determination under N.C. Gen. Stat. § 50A-201(a)(1) or (2)." *Id.* N.C. Gen. Stat. § 50A-201(a)(1) and (2) require the following,

> (a) Except as otherwise provided in G.S. 50A-204 [temporary emergency jurisdiction], a court of this State has jurisdiction to make an initial child-custody determination only if:
>
> (1) This State is the home state of the child on the date of the commencement of the proceeding, or was the home state of the child within six months before the commencement of the proceeding, and the child

is absent from this State but a parent or person acting as a parent continues to live in this State;

(2) A court of another state does not have jurisdiction under subdivision (1), or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum under G.S. 50A-207 or G.S. 50A-208, and:

> a. The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

> b. Substantial evidence is available in this State concerning the child's care, protection, training, and personal relationships;

N.C. Gen. Stat. § 50A-201 (2025).

Looking to subdivision (1), the UCCJEA defines "home state" as "the state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child-custody proceeding. . . . A period of temporary absence of any of the mentioned persons is part of the period." N.C. Gen. Stat. § 50A-102(7) (2025). Here, because the proceedings commenced on 9 January 2025, we must limit our analysis to the period of time between 9 July 2024 and 9 January 2025. *See* N.C. Gen. Stat. § 50A-201(1) ("This State *is* the home state of the child *on the date of the commencement* of the proceeding, or was the home state of the child *within six months* before the commencement of the proceeding[.]" (emphases added)).

"[W]e determine a child's home state jurisdiction based on the physical location of a child and their parent." *In re A.L.L.*, 254 N.C. App. 252, 263–64, 802 S.E.2d 598, 606 (2017) (citing *K.U.-S.G.*, 208 N.C. App. at 134, 702 S.E.2d at 107). It is undisputed that Kelly has lived in North Carolina since November 2023. Though she has lived in multiple residences within North Carolina since 2023, Kelly lived with her parents in North Carolina from February until December 2024, and Kelly testified she had not returned to Georgia since she moved to North Carolina in 2023. Further, the trial court found in an unchallenged finding of fact that Kelly and her father resided in Wake County at the time the petition was filed. Accordingly, Kelly's home state for purposes of the UCCJEA is North Carolina because she lived in North Carolina not just on the date of the proceeding's commencement but also "for at least six consecutive months immediately before the commencement of a child-custody proceeding," N.C. Gen. Stat. § 50A-102(7), which began on 9 January 2025 with the filing of the petition.

By establishing Kelly's home state as North Carolina, we now move to the second part of the test, in which "one of the following must have occurred:"

> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under G.S. 50A-202 or that a court of this State would be a more convenient forum under G.S. 50A-207; *or*
>
> (2) A court of this State or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

*L.T.*, 374 N.C. at 569–70, 843 S.E.2d at 201 (quoting N.C. Gen. Stat. § 50A-203 (2025) (emphasis added)).

The trial court's jurisdiction here proceeds through subdivision (2). The UCCJEA defines a "person acting as a parent" as an individual "other than a parent, who" (1) "[h]as physical custody of the child or has had physical custody for a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child-custody proceeding; and" (2) "[h]as been awarded legal custody by a court or claims a right to legal custody under the law of this State." N.C. Gen. Stat. § 50A-102(13) (2025). It is undisputed Kelly and her parents do not live in Georgia, but with the absence of the Georgia order from the record, Respondent-Mother argues "it is impossible to tell what the Georgia order *may* have done" and "there is no definitive indication as to whether [Ms.] Ava Jones meets the definition of [] 'any person acting as a parent.'" (Emphasis in original). However, regardless of termination status of the Georgia order and even what the order said, the record and testimony are clear: Kelly has not been in the physical custody of Ms. Ava Jones since November 2023, the last time Kelly resided or even was present in Georgia prior to commencement of this child-custody action. Relatedly, in its 11 February 2025 order, the trial court found Ms. Ava Jones has not been involved with [Kelly] for many years." Further, the UCCJEA defines "Physical custody" as "the physical care and supervision of a child," N.C. Gen. Stat. § 50A-102(14) (2025), and the petition and addendum to the memorandum of understanding

indicate Ms. Ava Jones, who was dismissed as a party to this action in the 11 February 2025 order, is not willing to care for Kelly.

Thus, the record does not show Ms. Ava Jones had physical custody of Kelly for "a period of six consecutive months, including any temporary absence, within one year immediately before the commencement of a child-custody proceeding" as both the record and testimony show Kelly had lived in North Carolina within "one year immediately before the commencement of the child-custody proceeding." In short, Ms. Ava Jones could not meet the statutory definition of a "person acting as a parent" under the UCCJEA. Moreover, Respondent-Mother does not offer any inconsistent evidence indicating otherwise, failing to meet her burden to present inconsistent evidence to rebut our presumption the trial court acted with subject matter jurisdiction. Therefore, because section 50A-102(13) requires both a time-specific period of physical custody as well as legal custody, Ms. Ava Jones no longer met the statutory requirement to be considered a "person acting as a parent" pursuant to section 50A-102(13).

With this in mind, we evaluate whether "[a] court of this State or a court of [Georgia] determine[d] that [Kelly], [Kelly]'s parents, and any person acting as a parent do not presently reside in [Georgia]." In the 30 May 2025 order, the trial court found Respondent-Mother resides in New York and Kelly's father resides in North Carolina. Because Ms. Ava Jones is no longer a "person acting as a parent," the North Carolina trial court–a "court of this State"–met the jurisdictional requirement under

section 50A-203(2) because neither Kelly, nor her parents, nor anyone acting as her parent presently resided in Georgia at the time of the commencement of the child-custody action. Therefore, the trial court could exercise modification jurisdiction and Georgia no longer had exclusive, continuing jurisdiction.[5]

Respondent-Mother argues the trial court "failed to communicate with the Georgia court and made no findings to assume subject matter jurisdiction to modify the existing custody determination." Although the Georgia order is not in the record, and WCHHS concedes no record evidence exists showing the trial court communicated with the Georgia court, section 50A-203 does not require the trial court to communicate with the Georgia court. Of course, section 50A-203(1) allows for the trial court to assert modification jurisdiction if "[t]he court of the other state determines it no longer has exclusive, continuing jurisdiction under G.S. 50A-202 or that a court of this State would be a more convenient forum under G.S. 50A-207." N.C. Gen. Stat. § 50A-203(1). However, this is not the only avenue for the trial court to assert modification jurisdiction because, as discussed above, subdivision (2) allows

---

[5] *See* N.C. Gen. Stat. § 50A-203, cmt. (2025) ("The modification State is not authorized to determine that the original decree State has lost its jurisdiction. The only exception is when the child, the child's parents, and any other person acting as a parent do not presently reside in the other State."); *Quevedo-Woolf v. Overholser*, 261 N.C. App. 387, 410, 820 S.E.2d 817, 832–33 (2018) ("[I]f the requirements for modification of a custody determination from another state pursuant to N.C.G.S. § 50A-203 are met, [exclusive, continuing jurisdiction] for that state will have ceased pursuant to the terms of N.C.G.S. § 50A-202."); N.C. Gen. Stat. § 50A-202(a)(2) ("Except as otherwise provided in G.S. 50A-204, a court of this State which has made a child-custody determination consistent with G.S. 50A-201 or G.S. 50A-203 has exclusive, continuing jurisdiction over the determination until. . . . [a] court of this State or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this State.")

for "[*a*] *court of this State* or a court of the other state [to] determine[] that the child, the child's parents, and any person acting as a parent do not presently reside in the other state" in the alternative to subdivision (1). N.C. Gen. Stat. § 50A-203(1)-(2) (emphasis added). Communication between the North Carolina trial court and the Georgia court was only *required* if the trial court was asserting temporary emergency jurisdiction under N.C. Gen. Stat. § 50A-204.[6] Because the trial court here had modification jurisdiction and did not need to exercise temporary emergency jurisdiction over Kelly, the trial court was not statutorily required to contact the Georgia court.

Additionally, as noted above, the trial court was not required to make findings about subject matter jurisdiction. *L.T.*, 374 N.C. at 569, 843 S.E.2d at 200–01; *In re J.H.*, 244 N.C. App. 255, 262–63, 780 S.E.2d 228, 235 (2015) ("The trial court did not make any findings of fact specifically addressing its subject matter jurisdiction under the UCCJEA. The UCCJEA does not specifically require these findings, although it would be a better practice to make them.").

---

[6] *See* N.C. Gen. Stat. § 50A-204(c)-(d) (2025); *In re R.G.*, 292 N.C. App. 572, 581, 899 S.E.2d 377, 384 (2024) ("[U]pon learning of a custody determination in another state, a court *exercising temporary emergency jurisdiction* 'must communicate with the other state's court to resolve subject matter jurisdiction going forward because the other state exercises exclusive and continuing jurisdiction as a result of its prior order.'" (quoting *A.L.L.*, 254 N.C. App. at 263, 802 S.E.2d at 606) (emphasis added); *In re M.B.*, 288 N.C. App. 351, 361, 886 S.E.2d 553, 561 (2023) (requiring a court to contact the court of another state in which a prior custody order was entered when the second state is asserting temporary emergency jurisdiction (first citing N.C. Gen. Stat. § 50A-204(c)-(d), and then citing *In re Brode*, 151 N.C. App. 690, 695–96, 566 S.E.2d 858, 862 (2002))).

Accordingly, Respondent-Mother has not met her burden of providing inconsistent evidence to rebut our presumption that the trial court acted with proper subject matter jurisdiction, and our review confirms the trial court acted with proper subject matter jurisdiction. Therefore, we hold the trial court's order need not be vacated for lack of subject matter jurisdiction because the trial court had modification jurisdiction pursuant to section 50A-203.

## III. Conclusion

For the foregoing reasons, we hold the trial court had proper subject matter jurisdiction over the child-custody proceeding.

AFFIRMED.

Judges ZACHARY and FREEMAN concur.

Report per Rule 30(e).